CLERK'S COPY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 02 1999

*R. ...* 
CLERK

SOUTHWEST CENTER FOR
BIOLOGICAL DIVERSITY, et al.,

   Plaintiffs,

v.          No. CIV 98-0769M/JHG

JAMIE RAPPAPORT CLARK,
et al.,
    Defendants,

and

PHELPS DODGE CORPORATION,

   Intervenor/Defendant.


### MEMORANDUM OPINION AND ORDER

  This case comes up on motion of the Plaintiffs to vacate the recent Order which allows

Intervenor-Defendant Phelps Dodge time to conduct discovery before any determinations are

made pursuant to Fed. R. Civ. Proc. 56. In considering Plaintiffs' objections to this Order and the

delay it poses to a final judgment, I have considered the record, the ultimate issues in the case,

the need for expediency in resolving these issues, the parameters under which Intervenor-

Defendant Phelps Dodge was permitted to enter the dispute, the grounds supporting subject

matter jurisdiction and, most particularly, the issue of standing in environmental actions. It is the

latter that Phelps Dodge raises as the reason it needs discovery. Thus, the status of Plaintiffs'

1

standing, or the possibility that Plaintiffs may lack standing to sue, presents the most urgent issue at this time and controls my decision on the pending motion.

In order to decide to what extent Phelps Dodge is entitled to investigate in detail and to challenge certain facts which Plaintiffs assert in support of standing, and in order to decide whether or not the Order allowing Phelps Dodge discovery should be withdrawn, I must determine (1) whether Plaintiffs at this stage of the proceedings meet essential requirements of standing, (2) whether what Phelps Dodge raises presents real question, or the potential for real question, regarding Plaintiffs' standing to bring the present suit, (3) whether it is probable, or even possible, that if permitted discovery, Phelps Dodge could establish relevant facts that would place standing or subject matter jurisdiction at issue. Having considered all of this, I conclude that the Order allowing discovery should be withdrawn.

### The Nature of the Case

The basic facts of the case are simple and undisputed. In 1994, the United States Fish and Wildlife Service designated areas within Arizona and New Mexico as a critical habitat for the spikedace and loach minnow, threatened species covered by the Endangered Species Act (ESA), 15 U.S.C. sec. 1540(g). This critical habitat designation was set aside in 1996, pursuant to Catron County Board of Commissioners of New Mexico v. United States Fish and Wildlife Service, 75 F.3d 1429 (10th Cir. 1996), for failure of the Secretary of Interior to comply with the National Environmental Policy Act, 42 U.S.C. sec. 4321-70d. The ESA requires a redesignation of critical habitat, which is planned by the federal Defendants, but which has not yet been completed; and Plaintiffs seek to force the federal Defendants by Court Order to designate a critical habitat for the spikedace and loach minnow at the earliest possible time.

2

The ultimate issues to be decided are similarly straightforward: first, whether Defendants' failure to redesignate a critical habitat violates the requirements of the ESA; second, if Defendants have violated the Act, how much time should be allowed as reasonably necessary for them to comply.

The federal Defendants, the U.S. Fish and Wildlife Service and its Director, and the U.S. Department of Interior and its Secretary, address these ultimate issues in their Response to Plaintiffs' Motion to Compel Agency Action. Defendants first point out that designation of a critical habitat is "a time and resource-intensive process that can be very costly," and that the provisions of the ESA indicate Congress intended district courts to have discretion to consider equitable factors "in determining whether, or under what time frame, it should require compliance with ESA Section 4 obligations." Defendants set out what work is necessary to complete the habitat designation and the time frames in which it might be accomplished. The federal Defendants do not raise issues of standing or jurisdiction.

It appears Phelps Dodge may not take a position on the ultimate issues. Even though Forest Guardians v. Babbitt, 174 F.3d 1178 (10th Cir. 1999), as the federal Defendants acknowledge, directs that the Secretary of the Interior may no longer rely on a priority listing for designating critical habitats pursuant to the ESA (and thereby postpone some designations), Phelps Dodge advocates allowing the federal Defendants to exercise "discretion and expertise in determining the best allocation of its limited resources." This is the antithesis of what the Tenth Circuit directs in Forest Guardians. Id.

Phelps Dodge emphasizes, in contrast, a lack of standing and an absence of subject matter jurisdiction. These are pled in its Answer and appear to be the true thrust of its defense. Subse-

3

quent to its Answer, Phelps Dodge asserts both defenses again and contends not only that

Plaintiffs lack standing, but also that it should be permitted additional time and discovery to

investigate the facts Plaintiffs assert to support standing.

## The Problem Presented

I find the situation in this case unique. Both in procedure and in substance, the issues

presented here differ from what precedes them in other environmental cases. Initially, I refer to

the Memorandum Opinion and Order entered March 4, 1999, which permitted Phelps Dodge to

intervene in the case, but expressly limited its participation "to responding to dispositive motions

filed by Plaintiffs or Defendants;" and I note that the federal Defendants do not contest either

subject matter jurisdiction or standing. Phelps Dodge raises both issues; and these attacks, by

their nature, have to be regarded as equivalent to motions to dismiss, yet outside the prohibition

on dispositive motions. In the same way, the Phelps Dodge Response to Plaintiffs' Motion to

Compel Agency Action challenges Plaintiffs' standing pursuant to Rule 56, and again

independently raises a dispositive issue outside the limitations of the Order permitting

intervention. Rather than circumvent the issues presented, on the basis of the Order allowing a

limited intervention, or to the contrary, rather than brush off Plaintiffs' objections to waylaying a

final determination in order for Phelps Dodge to conduct discovery, I have attempted to address

the pertinent questions and clear away some of the dispute which has prevented this case from

moving forward.

A thorough and successive examination of standing is not only sanctioned in cases like

the one at hand, but is clearly necessary. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).;

Bennett v. Spear, 520 U. S. 154 (1997). The question of standing is all the more critical and

complex "when . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation ) of *someone else*. . . ." Lujan v. Defenders of Wildlife, supra at 562. In these instances, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." Id. This is the dilemna procedurally. On the one hand, this is not the type of case that should be permitted to wallow in the court system, Forest Guardians v. Babbitt, supra; while on the other hand, the issue of standing in an environmental action demands early and persistent examination. Lujan v. Defenders of Wildlife, supra.

The dilemna as it pertains to substance originates in the basic premise of the Phelps Dodge attack on Plaintiffs' standing: that Plaintiffs cannot suffer injury from loss or diminution of the spikedace and loach minnow because Plaintiffs are unable to observe these fish or to determine whether or not they are present in the environment in the first place. For purposes of the pending motion, the parties agree that the spikedace and loach are indistinguishable from other minnows in their natural habitat. Thus, short of a scientific undertaking, no casual observer can know whether these fish are present in a particular stream, are reduced in numbers, or are not present at all; and consequently, Phelps Dodge argues no clear harm occurs to Plaintiffs when the numbers of spikedace and loach minnow are decreased or these fish are eliminated from the habitat altogether. On the one hand, then, the essential element of standing, injury in fact, requires a direct and specific injury, and on the other hand, the alleged harm is incapable of the customary experience of tangible loss.

## Fed. R.Civ. Proc. 12(b)

I take up these questions as if they had been raised by a Rule 12(b) motion to dismiss. The

5

record, except for the desire of Phelps Dodge to conduct discovery, appears ready for a ruling

pursuant to Rule 56, but I have chosen not to treat the issues at this point in terms of a summary

judgment. Instead, I look at the case at this juncture to see how closely Plaintiffs satisfy

fundamental constitutional requirements and the seriousness of the threat posed by Phelps Dodge,

especially if Phelps Dodge were permitted to challenge Plaintiffs on specific factual assertions.

These are primarily questions of law.

In treating issues of standing and subject matter jurisdiction as if they had been expressly

raised pursuant to Rule 12(b), I have considered the affidavits of Plaintiff David Hogan and

Mary Elizabeth Darling, a professional fisheries biologist who avers on behalf of Phelps Dodge.

Although under present circumstances it makes little difference, I do not believe that considering

these affidavits converts what I consider to be a motion to dismiss into a motion for summary

judgment. "When plaintiff has actual notice of all documents referred to in movant's papers and

has relied upon them in framing [the] complaint, [the] necessity of translating [a] Rule 12(b)(6)

motion into [a] summary judgment motion under Rule 56 is largely dissipated." Annotation, 2

A.L.R. Fed.1027, ___ (1969). "A court has wide discretion to allow affidavits, other documents,

and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). . . .

In such instances, a court's reference to evidence outside the pleadings does not convert the

motion to a Rule 56 motion." Holt v. United States, 46 F.3d. 1000, 1002 (10th Cir. 1995); SK

Finance v. La Plata County, Board of County Commissioners, 126 F.3d 1272, 1274-1275 (10th

Cir. 1997).

Where the motion to dismiss attacks standing, appellate courts examine motions to

dismiss somewhat differently. Lujan v. Defenders of Wildlife, supra, dictates that, while a

plaintiff at the motion to dismiss stage may submit additional facts by affidavit to support

standing, a defendant may not.

> For purposes of ruling on a motion to dismiss for want
> of standing, both the trial and reviewing courts must
> accept as true all material allegations of the complaint,
> and must construe the complaint in favor of the com-
> plaining party. . . .At the same time, it is within the trial
> court's power to allow or require the plaintiff to supply,
> by amendment to the complaint or by affidavits, further
> particularized allegations of fact deemed supportive of
> plaintiff's standing. If, after this opportunity, the plain-
> tiff's standing does not adequately appear from all
> materials of record, the complaint must be dismissed.
> Warth v. Seldin, 422 U.S. 490, 501-502 (1975).

To work between these lines, I have presumed as true the factual allegations of the

complaint only for purposes of finding standing. Holt v. United States, supra at 1002. I have also

accepted the affidavit of Plaintiff David Hogan as admissible, true, and permitted in

determinations relative to Rule 12(b) and standing. Warth v. Seldin, supra; SK Finance v. La

Plata County, supra. While I have considered the affidavit submitted by Phelps Dodge, I have

done so without giving credence to the facts there stated. I have used the assertions merely as a

measure or an indication of what kinds of facts and issues Phelps Dodge would raise, if permitted

discovery and an opportunity to challenge directly and specifically certain facts stated by Plaintiff

Hogan in his affidavit. Lujan v. Defenders of Wildlife, supra.

When I reach the merits of Plaintiffs' Motion to Compel Agency Action, I will consider

both affidavits, pursuant to Rule 6(d), as if they were served pursuant to Rule 56, and I will

consider (unless advised in the interim otherwise) that Plaintiffs continue to agree with Phelps

Dodge that neither Plaintiff David Hogan nor members of the organizational Plaintiff can

distinguish spikedace and loach minnows from other fish species in their natural environment and that this is not a disputed fact. For purposes of Fed. R. Civ. Proc. 56, of course, the two affidavits now considered for limited purposes are juxtaposed to determine whether a genuine issue of material fact remains in dispute. When I have reached that point, the affidavit of Mary Elizabeth Darling will be taken as true. Not going that far at this time, however, does not unfairly disadvantage Phelps Dodge because the approach I have taken to decide the pending motion gives full consideration to the facts Phelps Dodge might develop and seeks to explore.

## Constitutional Standing

Phelps Dodge correctly differentiates between statutory and constitutional standing. Statutory standing in environmental litigation normally involves an inquiry into whether or not a plaintiff is adversely affected or aggrieved within the meaning of the APA, 5 U.S.C. section 702. In this case, the federal Defendants state that the ESA itself, by reason of its "citizen suit" provision, establishes both a route for judicial review and specific remedies, so that the APA need not be implicated. Other than the fact that by this the federal Defendants concede the standing and subject matter jurisdiction Phelps Dodge challenges, the difference is not important at this point. For purposes of the pending motion, I simply acknowledge the distinction Phelps Dodge makes between statutory standing, whether it be pursuant to the APA, the ESA, or both, and constitutional standing, and I note that suits permitted by statute, such as the present one, must also meet constitutional standing requirements. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464 (1982).

Constitutional standing demands a "case or controversy" under Article III of the Constitution and is usually spoken of in these terms. It is primarily in this way that statutory and

8

constitutional standing may be analytically distinct questions. For purposes of deciding the matters at hand, it is unnecessary to differentiate the two. With regard to the questions presented in this case by Phelps Dodge, the Supreme Court has applied the same standard whether speaking of statutory standing or constitutional standing. Lujan v. Defenders of Wildlife, supra at 560-561. For both, the Supreme Court requires a personal injury in fact which is caused by, or traceable to, the challenged conduct and is likely to be remedied by the requested relief. Id. at 472. Further, the injury suffered must be a concrete and particularized invasion of a legally protected interest, that is actual or imminent and not conjectural or hypothetical. Id. at 560-561.

An organization or association has standing to sue when its members would have standing in their own right, the interests the organization seeks to protect are germane to its purpose, and neither the claim asserted nor the relief requested requires the individual members to be joined in the suit. Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977). When determining whether an organization or association has standing, the Supreme Court has recognized aesthetic, environmental and economic injuries as injuries in fact, so long as the challenged agency action can be shown to cause the injuries alleged and the plaintiff asserts a "specific and perceptible" harm which distinguishes the interests of the organizational plaintiff and its members from the generalized interests of the public as a whole. Sierra Club v. Morton, 405 U.S. 727 (1972); United States v.SCRAP, 412 U.S. 669 (1973).

Following an examination of constitutional standing pursuant to Article III, all plaintiffs must face additional considerations before standing and jurisidiction are established. This second set of criteria consists of judicially-constructed principles that examine the propriety of the court's jurisdiction in a particular case. Mount Evans Company v. Madigan, 14 F.3d 1444, 1450

9

(10th Cir. 1994).

> Beyond the constitutional requirements, a plaintiff
> must also satisfy the following set of prudential prin-
> ciples: (1) the plaintiff generally must assert his or her
> own legal rights; (2) the court must refrain from ad-
> judicating 'generalized grievances' most appropriately
> addressed by one of the other branches of government;
> and (3) the plaintiff's complaint must fall within the
> zone of interest to be protected or regulated by the
> statute or constitutional guarantee in question. Id.

APA suits require, first, that the injury in fact be suffered by a plaintiff within the class of persons "adversely affected or aggrieved," 5 U.S.C. sec. 702, Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150 (1970). In addition, the injury must be arguably "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Id. at 153; Clarke v. Securities Industry Association, 479 U.S. 388, (1987). "[T]he party seeking review under 702 must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" Lujan v. National Wildlife Federation, 497 U.S. 871, 883 (1990). "The essential inquiry is whether Congress 'intended for [a particular] class [of plaintiffs] to be relied upon to challenge agency disregard of the law.'" Clarke v. Securities Industry Assoc., supra at 399.

The whole of a standing analysis "is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief." Wyoming v. Lujan, 969 F.2d 877, 882 (10th Cir. 1992); Mount Evans Company v. Madigan, supra. The key is specificity of the injury. Whether looking to an individual plaintiff or an organizational plaintiff, statutory or constitutional standing, the APA or the ESA,, the principle inquiry looks for a direct and concrete injury. Sierra

10

v. Morton, supra. This injury in fact must be the type of injury that is defined, personal and imminent. Bennett v. Spear, supra; Lujan v. Defenders of Wildlife, supra; Lujan v. National Wildlife Federation, supra; American Forest & Paper Assoc. v. U.S. Environmental Protection Agency, 154 F.3d 1155 (10th Cir. 1998).

In United States v. SCRAP, supra, the Supreme Court looked for "a direct stake in the controversy." Id. at 687. SCRAP alleged that its members used the forests, streams, mountains and other resources in the geographical area at issue for their camping, hiking, fishing, and sightseeing, and that the challenged action of the Interstate Commerce Commission disturbed or threatened all of these activities. The Supreme Court considered the alleged injuries to include "economic, recreational and aesthetic harm," and found the allegations sufficient to confer standing. Id. at 685-696. While later cases retreat from the inclusive view of standing expressed in SCRAP, the central concern remains the injury in fact requirement and the finding of an injury sufficiently particularized to preclude lawsuits in those situations where plaintiffs have no direct interest.

### The Phelps Dodge Position

In their Amended Complaint, Plaintiffs allege statutory standing pursuant to the ESA and the Administrative Procedures Act (APA), 5 U.S.C. sec. 551-706. By its Answer and subsequent argument, Phelps Dodge expressly attacks constitutional standing. According to Phelps Dodge, Plaintiffs fail to establish an injury in fact which meet Article III standards, and instead, make only general averments which are insufficient to establish either a "case or controversy" or the direct threat expressly required by Lujan v. Defenders of Wildlife, supra. Phelps Dodge contests the sufficiency of Plaintiffs' injury in this case principally because, as Phelps Dodge asserts and

Plaintiffs concede for purposes of the present motion, Plaintiff David Hogan and the members of the Plaintiff organization are unable to distinguish spikedace and loach minnows from other fish species in their natural habitats.

In the Amended Complaint, Plaintiff Southwest Center for Biological Diversity alleges, among other assertions, that its members "enjoy the biological, recreational and aesthetic values of the areas currently and historically inhabited by the spikedace and loach minnow and appreciate the complex interactions of species which indicate the health of their habitat." Phelps Dodge counters by stating: "Neither Plaintiff identifies how it is injured, the nature of any such injuries, any connection between the injuries and the relief it is seeking, how its injuries are traceable to the action or inaction of the Defendants or how it is likely that the injury could be redressed by a favorable decision by this Court."

Thus, Phelps Dodge argues that Plaintiffs injuries are hypothetical and conjectural "at best." Relying on Defenders of Wildlife, Phelps Dodge maintains that Plaintiffs' inability to observe the spikedace and loach minnow in their natural habitat leaves the injuries as alleged short of the concrete and particularized injury the Supreme Court has required. Phelps Dodge states in its Response to Plaintiffs' Motion to Compel Agency Action: "Merely knowing or believing that the species still exist in the wild is not enough because that mere knowledge or belief is analogous to the circumstances present in Defenders of Wildlife where the Supreme Court held that the lack of specific plans to observe the endangered species is too speculative for Article III purposes." Supported by the affidavit referred to earlier from a professional fisheries biologist, Phelps Dodge contends that several species of fish are similar in appearance and behavior to the spikedace and loach minnow, and further, that "Plaintiffs have not alleged that

they observe the loach minnow or spikedace in their natural habitat or that they could even distinguish those species from other minnows in their natural habitat," even with "optimal water and clarity viewing conditions, and viewing under water with a face mask." In order to confirm the presence of loach minnows from other minnows in a stream, according to Phelps Dodge, "it is necessary to net the minnows, remove them from the water and physically examine them."

Additionally, Phelps Dodge argues that even if Plaintiffs could establish they are able to distinguish and observe spikedace and loach minnows in their natural habitats and are injured when deprived of those observations, Plaintiffs cannot establish either that a causal connection exists between this injury and Defendants' delay in designating a critical habitat or that there exists a substantial likelihood that Plaintiffs' injuries relative to reduced numbers of spikedace and loach minnow would be alleviated by the federal Defendants' decision on a critical habit. Further, Phelps Dodge contends there exists no assurance that designation of a critical habitat would include the geographical area used and enjoyed by the Plaintiffs. All of this, according to Phelps Dodge, adds up, first, to an alleged injury not redressable by the relief requested, and secondly, to a failure of standing.

Plaintiffs' Standing

The requirement of Article III standing is immutable; and recognizing its preeminence, I have considered fully all that Phelps Dodge proposes. Yet, I do not accept the Phelps Dodge contentions and find that Plaintiffs have standing. I conclude, also, that what Phelps Dodge wants to establish by discovery, even if fully established, would neither destroy nor undermine that standing. The only difference it would make, if I were to allow discovery, is to delay the case.

I reject the Phelps Dodge position for several reasons. First, the Endangered Species Act

13

authorizes "citizens' suits" with a "remarkable breadth." Bennett v. Spear, supra at 164. The

Supreme Court tells us that by the language it chooses to utilize, Congress can provide in any

statute that standing be "expanded to the fullest extent permitted under Article III." Id. Congress

did so with the Civil Rights Act of 1968. Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205

(1972). The statutory language and the subject matter of the ESA provides an "even clearer"

example of Congress granting the widest possible standing. According to the Supreme Court, the

ESA makes "the intent to permit enforcement by everyman even more plausible" than that found

in the Civil Rights Act of 1968. Id. at 166.

> Our readiness to take the term 'any person' at face value
> is greatly augmented by two interrelated considerations:
> that the overall subject matter of this legislation is the en-
> vironment (a matter in which it is common to think all
> persons have an interest) and that the obvious purpose of
> the particular provision in question is to encourage enforce-
> ment by so-called 'private attorneys general.' Bennett v.
> Spear, supra at 165.

Phelps Dodge position is not, as it purports, simply that the particular Plaintiffs in this

case cannot establish standing. More than that, the position dictates that whenever a species

allegedly harmed by environmental circumstances is not identifiable to the naked eye, no one else

can establish standing either. This does not merely oppose the clear statutory intent of the ESA to

allow for the widest possible standing; the approach taken by Phelps Dodge by its logical reach

defeats the statute altogether. Whenever government action or inaction threatens a species of

wildlife or a part of the environment that is too small, too few, too obscure or remote, or too

imperceptible to be separated out from its environment by the common citizen who enjoys that

environment, the position taken by Phelps Dodge would declare there is no perceptible harm, and

therefore, no channel to relief. This would be true, I believe, in almost, if not every instance, without regard for the identity or personal experience of the plaintiff. In a sophisticated and scientifically capable society, this makes little sense. More than overtly antagonistic to the statutory scheme, this approach is unrealistic. Phelps Dodge takes a legal standard intended to distinguish real from conjecture, and uses it, ironically, to deny what we know from common experience, that more than readily visible changes in our immediate environment can threaten us directly and concretely with an imminent and personal harm. Simply because myriad components of a healthy environment cannot always be separated out, one by one, as independent, easily identifiable sources of benefit and enjoyment, the law should not leap to an assumption that no one is harmed and no relief is available.

Plaintiff David Hogan states in his affidavit that he has spent "significant time studying the biology, habitat requirements, and distribution of both the loach minnow and the spikedace," that in the past nine years he has "visited all rivers and streams occupied" by these species, and that he is familiar with "the aquatic and riparian ecosystems upon which they depend," including those which were formerly designated as critical habitat of the spikedace and loach minnow. Plaintiff Hogan states that he derives

> educational, scientific, moral, spiritual, aesthetic and
> recreational enjoyment from the knowledge that loach
> minnow and spikedace are present in a given river or
> stream stretch regardless of whether I view individuals
> of these species. Loach minnow and spikedace are
> prime indicators of relatively healthy aquatic and
> riparian habitat conditions and wilderness values. . . .
> Aff. at para. 7.

Clearly, this sets out a stake in the outcome and a direct benefit and potential loss

15

personal to the Plaintiff. It meets all, I believe, that the Supreme Court has required to establish standing to sue. Beside it, the Phelps Dodge argument that because Plaintiffs cannot see and distinguish individual fish in the stream, they are not harmed, fails to persuade.

As a second reason, then, that I cannot accept the Phelps Dodge premises, I do not see the requirement of a *specific* injury sufficient to confer standing to bring an environmental suit as necessarily equating to a *precise* and clearly measurable injury. While there exists no precedent exactly like the suit at hand, other cases where standing has been attacked on similar grounds have not required the certainty and precision of harm that Phelps Dodge suggests is necessary. See: Japan Whaling Association. v. American Cetacean Society, 478 U.S. 221 ( 1986); Bennett v. Spear, supra; United States v.SCRAP, supra; Catron County Board of Commissioners v. United States Fish and Wildlife Service, supra; Wyoming Farm Bureau Federation v. Babbitt, 987 Fed. Supp. 1349 (D.C. Wyo. 1997).

Aesthetic interests, which include observation and study of endangered animals, can be framed so as to present cognizable grounds to support Article III standing. Humane Society of the United States v. Babbitt, 46 F.3d 93, 96 (10th Cir. 1995), provides one example. These situations clearly encompass a plaintiff who, as Plaintiff Hogan, challenges "conduct threatened to diminish or deplete the overall supply of endangered animals available for observation and study." Id.

Economic interests, such as those alleged in Bennett v. Spear, supra, where plaintiffs received irrigation water from a nearby lake and believed that governmental action was likely to reduce substantially the overall quantity of water available to them, have also stated grounds to support Article III standing despite allegations that lacked quantification, certainty and

16

predictability and stated, instead, a general diminution in the aggregate amount of the resource at issue in a specific geographic area highly likely to impact the plaintiffs. Id. at 167.

Likewise, in Lujan v. Defenders of Wildlife, supra, where plaintiffs were "organizations dedicated to wildlife conservation and other environmental causes," Id. at 559, the fact that individuals supplying affidavits on behalf of plaintiffs hoped to observe certain animal species in their traditional habitats did not preclude standing so much as the fact that these individuals had no immediate access to the vicinity where the animals were located. Plaintiffs were not geographically proximate to the threatened animals and had no plans to place themselves proximate to the animals; and therefore, plaintiffs were only indirectly threatened. One plaintiff, for instance, intended to visit Sri Lanka at some indefinite time in the future. "Such 'some day' intentions--without any description of concrete plans, or indeed even any specification of *when* the some day will be--do not support a finding of the 'actual and imminent' injury that our cases require." Id. at 564. That is not the case at hand.

Thirdly, I reject the Phelps Dodge position because Plaintiffs here, unlike those in Defenders of Wildlife, do not "seek *wholesale* improvement" of a federal agency's program "by court decree." Id. They do not bring this case on the general premises that they are "any person." By his affidavit Plaintiff David Hogan distinguishes a concrete injury not identical to the public at large. I find in the facts presented by this affidavit an injury sufficiently immediate, concrete and specific, and except for Plaintiff's ability to distinguish a spikedace and loach minnow from other species of fish in their habitat, Plaintiff Hogan's affidavit appears not susceptible to challenge. Of the facts presented in Plaintiff's affidavit, all that Phelps Dodge calls into question is whether or not Plaintiff can distinguish between the spikedace and loach minnow

and other fish species in the same habitat. Plaintiffs concede this. Even if this case were delayed for discovery and deposition of Plaintiff Hogan and others, the answers accumulated would not be dispositive of either the central issues of this case or the issue of standing.

Plaintiff David Hogan avers that he lives, works and spends substantial time in the immediate area where spikedace and loach minnow are known to exist. He knows and has visited extensively in the several rivers of Arizona and in the San Francisco and Gila river systems in New Mexico and plans to return to these in the near future and at least once per year to view spikedace and loach minnow, conduct "field surveys of aquatic and riparian habitat conditions where these species are present and enjoy the ecosystem conditions and wilderness characteristics found in association with remaining loach minnow and spikedace populations." This is much more than the "animal nexus," the "professional nexus," and the "in the vicinity" facts rejected by the Supreme Court in <u>Lujan v. Defenders of Wildlife</u> and other cases. This is so far from those situations that I see Plaintiffs here solidly within constitutional parameters to the point that additional details of time, place, history and personal habit which could be dislodged from Plaintiffs by the discovery Phelps Dodge suggests are unlikely, at best, to upset the basic facts which I see as supportive of Plaintiffs' legal right to bring this suit. In this conclusion, I also give substantial weight and credence to the failure of the federal Defendants to join in the attack on Plaintiffs' standing or in the request to investigate the specific parts and parcels of Plaintiffs' injuries.

In the end, then, whether the issue is designated constitutional or statutory standing, the test demands "a factual showing of perceptible harm." <u>Id</u>. at 566. Plaintiffs in the present case meet this test, and from all I have evaluated to this point, are likely to meet the test for purposes

of subsequent rulings pursuant to Rule 56.

> It is clear that the person who observes or works with
> a particular animal threatened by a federal decision is
> facing perceptible harm, since the very subject of his
> interest will no longer exist. It is even plausible--though
> it goes to the outermost limits of plausibility--to think
> that a person who observes or works with animals of a
> particular of a particular species in the very area of the
> world where that species is threatened by a federal deci-
> sion is facing such harm, since some animals that might
> have been the subject of his interest will no longer exist.
> Id. at 566-567.

### Causal Connection

In addition to injury, of course, Plaintiffs cannot be conferred with standing without a

showing that there is a "fairly traceable" causal connection between the injury claimed and the

conduct challenged. Watt v. Energy Action Education Foundation, 454 U.S. 151, 161 (1981).

This connection is made easily in the present case. Not only the courts, but also Congress has

expressly linked the failure to designate a critical habitat and diminution of an animal species.

Forest Guardians v. Babbitt, supra; 16 U.S.C. Sections 1533-1538. The threat to a species

survival, absent particular care, is the essence of the Secretary's declaration of "endangered."

Thus, I find that Plaintiffs identify a specific violation and allege a failure to act directly

attributable to the federal Defendants.

Finally, Plaintiffs must demonstrate redressability. Id. at 568; Sullivan v. Lujan, 969 F.2d

877 (10th Cir.1992). "The redressability prong of Article III standing analysis requires simply

that the claimed injury 'is likely to be redressed by a favorable decision.'" Humane Society of the

United States v. Babbitt, supra at 99. To satisfy the element of redressability, however, Plaintiffs

need to show only plausibility. Watt v. Energy Action Education Foundation, supra. Plaintiffs do

not need to indicate the certainty, but only the likelihood (as opposed to speculation) that the injury will be redressed by a favorable decision. Mount Evans Company v. Madigan, supra at 1450.

Again, Plaintiffs fall within precedent. In Watt v. Energy Action Education Foundation, supra, for example, the State of California challenged the Secretary of the Interior's failure to comply with a statutory requirement relating to selection of a bidding and royalty system for leasing offshore gas and oil rights. The Secretary attacked standing on the ground that California's complaint was not redressable by the relief sought. The Secretary argued that, even if California were to win the case and the Secretary were to engage in the required statutory process, the royalty system eventually selected might result in no benefit whatsoever to California, bringing it none of the cash it anticipated. Yet, the Supreme Court saw no problem with redressability. It found sufficient nexus between the claim and the relief and upheld California's standing to sue. Even though there existed no way to assure that the requested relief would guarantee California royalties, the Supreme Court held the State had standing because of the loss of "an opportunity for benefit." Id. "The essence of California's complaint," said the Court, ". . . is that the Secretary of the Interior . . . has breached a statutory obligation to determine through experiment which bidding system works best. According to California, only by testing non-cash-bonus systems can the Secretary of the Interior carry out his duty to use the best bidding systems and thereby assure California a fair return for its resources."

Watt v. Energy Action Education Foundation is similar to the case at hand. Only by carrying out his statutory duty, as Plaintiffs insist, can the Secretary determine how to preserve the species at issue. While Phelps Dodges argues that Plaintiffs complaints are not redressable by

20

designation of a critical habitat for the spikedace and loach minnow because there is no assurance

that a critical habitat, once designated, would include the area used by the Plaintiffs, I find from

Plaintiff Hogan's affidavit that Plaintiffs state a reasonable probability the end result will be as

they anticipate and that designation of a critical habitat will include the area Plaintiffs now

utilize. I find that Phelps Dodge, rather than Plaintiffs, engage in the greater speculation.

Plaintiffs, therefore, meet the redressability test, as well. A decision favorable to Plaintiffs

could go a long way in maintaining the number of spikedace and loach minnow now present in

the rivers of Arizona and New Mexico and enjoyed and studied by the Plaintiffs. See: Mount

Evans Company v. Madigan, supra.

### Jurisdiction

"With regard to jurisdiction, the Tenth Circuit, along with most other courts, has held that

courts may entertain challenges to unreasonably delayed agency action on the basis of Section

1331 jurisdiction and Section 706(1) of the APA." Yu v. Brown, 36 F. Supp. 922, 928 (D.C.

N.M. 1999); Forest Guardians v. Babbitt, supra at 1269; Carpet, Linoleum and Resilient Tile

Layers, Local No. 419 v. Brown, 656 F.2d. 564, 567 (10th Cir. 1981). Because I have found

standing unquestionably established, I find the Phelps Dodge references to a lack of subject

matter jurisdiction of little merit and largely settled by the foregoing, so as not to require added

discussion. Again, I give weight and credibility to the absence of a challenge to subject matter

jurisdiction from the federal Defendants; and having also considered the allegations of the

Amended Complaint and the case law, I find and conclude that subject matter jurisdiction is

clearly present. See: Carpet, Linoleum and Resilent Tile Layers, Local Union No. 419 v. Brown,

656 F.2d 564 (10th Cir. 1981).

<u>Discovery</u>

I realize that in all of the matters discussed Plaintiffs have the burden of proof. <u>Lujan v.</u>

<u>Defenders of Wildlife,</u> <u>supra</u> at 561. In addition, a party is ordinarily provided adequate time and

means to conduct discovery before disposition by summary judgment is considered. Fed. R. Civ.

Proc. 56. The facts pertinent to disposition of this case, however, principally that the spikedace

and loach minnow are endangered species and the federal Defendants have not designated a

critical habitat for these species, are uncontested. If Plaintiffs are entitled to judgment at all in

this case, it appears they would be entitled as a matter of law. Thus, a diversion for discovery

could reach only to issues of standing and matters covered in this Memorandum Opinion; and

from all that I have studied on these questions, I cannot see that Phelps Dodge has provided any

indication that with or without discovery, it can create a factual dispute which would be material

in the final analysis and I see no point to a delay to permit Phelps Dodge discovery. The defenses

raised to this point prove legally inadequate. Nothing persuades me that, with further

development, Phelps Dodge could strengthen these defenses either in facts or in law so as to be

sufficient to defeat Plaintiffs' standing. What else Phelps Dodge may present in a challenge to

standing or subject matter jurisdiction is too general, vague and speculative to warrant further

delay.

"Standing arguments present litigants with one more opportunity for threshold dispute

and delay. . . . Unarticulated and arbitrary predilection, cast as standing, defeats rights that

deserve judicial protection." Wright, Miller & Kane, <u>Federal Practice and Procedure</u>: Civil 3d

Section 3531.3. Delay has already occurred and the case should now move forward. Both by the

nature of the dispute and the basic purpose underlying Rule 56, Id. at Section 2719, this case should move to summary judgment proceedings without further deferral or postponement.

Conclusion

The parties have inquired with regard to status reports that I requested at the time this case was transferred. I have not received any reports and in the interim have been thoroughly through the record. I understand the case to be ready for determination of Plaintiffs' Motion to Compel Agency Action, with nothing remaining to be done either by the Court or by the parties in the interim. Unless a party disagrees with this assessment, it appears the requested status reports are no longer necessary.

The Motion to Compel Agency Action will be taken up in the immediate future pursuant to Fed. R.Civ. Proc. 56, as if it were a motion for summary judgment. Before a ruling is issued, I will permit response to this Memorandum Opinion and Order and, as Phelps Dodge has requested, I will hear oral argument. Each party may file a supplemental statement, limited to five pages, which shall serve as an opportunity to respond to what has been raised in this Memorandum Opinion, as well as to clarify any matters pertinent to summary judgment. Plaintiffs' supplemental statement should be filed no later than August 17, and Defendants' no later than August 23, with no reply to be filed. Oral argument will be heard on August 26, 1999, at 10:30 a.m. and limited to one-half hour each party. Oral argument will be held in the Brazos Courtroom of the United States Courthouse, 333 Lomas NW, Albuquerque.

NOW, THEREFORE, IT IS ORDERED that the Order entered June 30, 1999, permitting discovery and setting a 90 day delay of any final determination in this case (file document 46) is vacated in its entirety.

23

IT IS FURTHER ORDERED that the parties appear for oral argument on August 26, 1999, at 10:30 a.m, at the federal courthouse, Albuquerque, New Mexico.


_____
SENIOR UNITED STATES JUDGE